CHARLES P. MORRISON et al., Respondents, *v.* HURTIG & SEAMON, Appellant.

Contract — construction of contract between theatrical manager and actress as to costumes to be worn by latter — erroneous rejection of evidence explanatory of contract — error in charge.

The contract to recover damages for breach of which this action is brought was made between plaintiffs, who were actors, and defendant, a corporation engaged in producing theatrical performances; it in substance provides: (1) That although the contract was in writing, it contemplated rules and regulations thereafter to be formulated by the defendant and carried out by the plaintiffs, in so far as they were reasonable and necesssary. (2) That in the matter of costumes the plaintiffs were to furnish at their own expense any or all of the enumerated articles that were *necessary*. Plaintiffs refused to comply with defendant's requirements as to the costume in which one of them was to appear, claim being made that a costume had previously been provided, and also that the one required was "insulting," whereupon defendant terminated the contract.

*Held*, error to assume that conversations upon the subject of costumes between the parties were inadmissible as tending to vary or contradict the written contract, for the instrument contemplated future discussion and negotiation between the parties upon that subject. Neither party had the right to arbitrarily decide what costumes should be necessary.

If the regulation as to costume, sought to be imposed upon the plaintiffs by the defendant, was reasonable under all the circumstances, the plaintiffs were bound to comply with it at their own expense. If it was unreasonable and arbitrary, they were under no obligation to comply with it, even though they were put to no expense. The case should have gone to the jury upon that theory.

*Morrison* v. *Hurtig & Seamon*, 130 App. Div. 880, reversed.

(Argued April 7, 1910; decided April 26, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 26, 1909, affirming a judgment in favor of plaintiffs entered upon a verdict and an order denying a motion for a new trial.

The plaintiffs, husband and wife, are actors by profession, and the defendant is a domestic corporation engaged in the business of managing theatres, organizing theatrical companies and producing theatrical and musical performances. In July, 1905, the plaintiffs and the defendant entered into an agreement in writing, by the terms of which the latter employed the former to act in musical comedy or farce at salaries which were specified for the seasons of 1905 and 1906. The contract required the plaintiffs to perform in any parts for which they should be cast, to attend and take part in all rehearsals called by the defendant, to pay strict regard to make-up in dressing of characters, to furnish at their own expense "all necessary costumes, wigs, shoes, boots, tights, stockings and gloves in and about their performances," to conform to all the rules and regulations of the defendant then in existence or thereafter to be made, and it contained a number of other covenants not material to the present controversy.

The plaintiffs entered upon their employment under the contract, and continued until December 18th, 1905, when the defendant's manager notified them of their discharge, to take effect on December 30th. The verbal notice thus given was confirmed on the 19th of December, 1905, in a written communication signed by the defendant. The difficulty between the parties was occasioned by the alleged refusal of the plaintiff Henrietta Morrison to comply with the written direction of the defendant, given on November 29th, 1905, that the

former should procure and wear, for use in the third act of a musical farce in which the plaintiffs were cast, a military costume of which a sketch was submitted. In that connection it appears that when the plaintiffs were first notified, in August, 1905, to appear for rehearsal in a musical ·farce entitled " Me, Him and I," some question arose as to the costume to be worn by the plaintiff Henrietta Morrison in the third act of that production. The defendant submitted a sketch of a costume, to which Mrs. Morrison objected, and which at her suggestion was modified so as to be acceptable to both parties. Thereupon Mrs. Morrison procured four separate costumes at an expense of about five hundred dollars, and these were used by her in the performance of the production referred to, without objection from the defendant, until the notice of November 29th. When the plaintiffs were discharged they notified the defendant of their readiness to continue the performance of their part of the contract, but the defendant insisted upon its right to terminate the same, and thereafter this action was brought to recover the damages occasioned by the defendant's alleged breach. At Trial Term the plaintiffs had a verdict, upon which a judgment was entered, from which an appeal was taken to the Appellate Division, where it was affirmed.

*George Edward Joseph* and *Leon Laski* for appellant.

*Andrew J. Shipman* for respondents. The court did not err in his charge to the jury that this procurement of a specified costume was a performance of the contract. (*Schoellkopf* v. *Coatsworth*, 166 N. Y. 77; *Industrial Trust* v. *Tod*, 180 N. Y. 215; *Seitz* v. *B. R. Co.*, 141 U. S. 510; *E. I. Works* v. *Farley*, 83 App. Div. 82; 178 N. Y. 595; *Farrington* v. *Brady*, 11 App. Div. 1; *Seymour* v. *Warren*, 179 N. Y. 1; *Jacquire* v. *Boutard*, 89 Hun, 437; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Hart* v. *Thompson*, 10 App. Div. 187.)

Werner, J. This case illustrates the facility with which a simple case, which ought to be definitely disposed of in a sin-

gle trial, can be transformed into an apparently complex controversy by the violation of the most elementary rules of evidence. The case is full of objections and exceptions which seem to have served no purpose except the obscuration of the one issue at stake. As the greater number of these objections were interposed by defendant's counsel, and resulted in rulings which were adverse to the respondents, we should be disposed to affirm the judgment but for one fundamental error in the charge of the learned trial court, to which the counsel for the defendant duly excepted. The bearing of this charge upon the issue presented by the pleadings, can be best emphasized by a short statement of the pleadings and an outline of the general course of the trial.

The complaint alleged the execution of the contract between the parties; plaintiffs' part performance thereof and willingness to complete; defendant's wrongful discharge of the plaintiffs and its unjustifiable refusal to permit completion. The answer denied performance on the part of the plaintiffs; denied the alleged breach thereof by the defendant; and affirmatively set forth a breach by the plaintiffs in that the plaintiff Henrietta Lee Morrison refused to obey the reasonable and proper instructions and regulations of the defendant to wear a certain designated and specified costume in the performance of the role or part for which she had been engaged. In connection with the pleadings it is important to remember that the contract bound the plaintiffs to furnish " at their own expense, all *necessary* costumes, wigs, shoes, boots, tights, stockings and gloves, in and about their performances," and to " pay strict regard to make-up in the dressing of characters," and to " abide by and conform to all rules and regulations " of the defendant " now made or hereafter to be made." These excerpts from the contract clearly demonstrate two things: 1. That although the contract was in writing, it contemplated rules and regulations thereafter to be formulated by the defendant and carried out by the plaintiffs, in so far as they were reasonable and necessary. 2. That in the matter of costumes, the plaintiffs were to furnish at their own expense

any or all of the enumerated articles that were *necessary.*
The bare statement of these propositions makes it plain that
the issue was whether the plaintiffs had conformed to the regu-
lations of the defendant, or if not, whether the regulations
not complied with were unreasonable or unnecessary.　The
determination of those questions, of course, decides the ques-
tion whether the defendant's dismissal of the plaintiffs was
wrongful or justifiable.

Counsel for the plaintiffs, evidently intent upon pursuing
that theory of the case, sought to show what conversations and
transactions had transpired between the parties after the execu-
tion of the written contract, but was met at every turn by the
objections of the defendant's counsel, which were sustained
by the court.　The result was that, more by accident than
design, the plaintiffs were permitted to prove merely that the
defendant submitted to the plaintiff Mrs. Morrison a plate or
drawing indicating the costume which the latter was to wear
in the second act of the play for which she was cast.　This
costume she objected to, and at her suggestion it was so modi-
fied as to be acceptable to both parties.　The record discloses
that the plaintiffs continued to perform the parts assigned to
them until November, 1905, when the company or troupe of
which they were members were about to be sent to New York
city for a series of performances.　Then the plaintiff was
served with the notice requiring her to exchange the costume
which she had been wearing in the second act of " Me, Him
and I " for a " military costume."　That was a costume in
"tights " without skirts.　Although the objections of defend-
ant's counsel and the rulings of the court had precluded the
plaintiffs from giving Mrs. Morrison's version of the conversa-
tions with the officers of the defendant, the manager of the
latter was permitted to testify for the defense that in a conver-
sation between him and Mrs. Morrison she said that the pro-
posed costume was insulting, and that she would not wear
tights.　Had this peculiar trend of the trial been carried to its
logical end the complaint would have been dismissed, because
the only definite testimony bearing upon the negotiations

between the parties subsequent to the execution of the contract was that given by the defendant's manager, and that placed Mrs. Morrison in the attitude of objecting to the costume upon a ground as to which she had not been permitted to testify. The complaint was not dismissed, but the mistrial was completed by the trial court's erroneous construction of the contract which was submitted to the jury as the law of the case. In that behalf the jury were instructed as follows: " Now I have construed the contract in the case to mean that the defendants were entitled to require this lady to wear this particular costume. I also construe the contract to mean, which is the law in this case for you, that where the parties had once agreed upon a costume for a particular part in a particular play, and that costume had been procured by this lady, that then she had fulfilled her part of the contract, so far as the costume for that particular play and part were concerned; and the defendant could not afterwards require her to procure at her expense another costume." And again the court said: " Now I charge you that having once agreed on the costumes, and having once procured them for that particular play and that particular part, her obligation was at an end, and she was not required, even if the defendant directed her so to do, to procure at her expense another costume." To these instructions the defendant's counsel excepted. This exception to the charge is fatal to the judgment. The learned trial court clearly misinterpreted the contract. It expressly provides that the plaintiffs shall furnish all *necessary* costumes at their own expense. Whether the particular costume which the plaintiff Mrs. Morrison refused to wear was *necessary,* depended upon facts and circumstances to be considered in the light of the other stipulations, reasonably construed, binding the plaintiffs to conformity with " all rules and regulations of the party of the first part now made or hereafter to be made " and requiring them to " pay strict regard to make-up in the dressing of characters." It was error to assume that the conversations upon this subject between the parties were inadmissible as tending to vary or contradict the written contract,

for the instrument contemplated future discussion and negotiation between the parties upon the subject of costumes.   Neither party had the right to arbitrarily decide what costumes should be necessary.   That was a question to be decided in view of the character of the contract, the parts to be played by the plaintiffs, and such reasonable regulations as the defendant had the right to impose for the purpose of making the production acceptable to the public or financially profitable.   If the regulation as to costume, sought to be imposed upon the plaintiffs by the defendant, was reasonable under all the circumstances, the plaintiffs were bound to comply with it at their own expense.   If it was unreasonable and arbitrary they were under no obligation to comply with it, even though they were put to no expense.   That is the theory upon which the case should have been submitted to the jury, upon all the evidence fairly addressed to the issue, and the departure from that theory constitutes error which we cannot ignore.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Edward T. Bartlett, J. (dissenting).   I am unable to agree to the reversal of this judgment.   The plaintiffs are husband and wife, and were engaged, as the written contract between them and the defendant corporation states, in performances that were special, unique and extraordinary in character.   The contract bound them to appear for two seasons under the management of the defendant, a corporation engaged in the production of musical comedies and other plays.

The plaintiff, Mrs. Morrison, appeared upon the stage under her maiden name of Henrietta Lee ; she was accorded the privileges of a star performer.   The written contract is very general as to the details of costumes.   The plaintiffs were obligated " to pay strict regard to make-up in the dressing of characters," and further agreed " to furnish at their own expense all necessary costumes, wigs, shoes, boots, tights, stockings and gloves in and about their performances."   Also agreed " to perform in any parts which they or either of them may be cast for."

This case seems to have been tried upon the theory that this written contract was sufficient in its terms and provisions to guide the respective parties and render unnecessary any resort to further consultation and discussion of details. Notwithstanding the plaintiffs succeeded before a jury in recovering a very substantial verdict, the record discloses that the trial judge, in many of his rulings against the plaintiffs, manifestly committed legal error, which is of course immaterial at this time, except as illustrating the character of the contract.

The counsel for the plaintiffs succeeded in showing without objection, that Hurtig, the president of the defendant corporation, did discuss with Miss Lee the question of costumes, and that she in pursuance thereof purchased four costumes at an expense of five hundred dollars in preparation for appearances in the character of " America " in the piece entitled " Me, Him and I."

The drawing of the first costume furnished to Miss Lee by the defendant had a skirt that came down to the knees, and on her criticism that it was too short, the defendant furnished her with a drawing of a skirt that came down to about the boot tops. It appears that in this costume as thus changed she commenced to play in the piece " Me, Him and I " on August 16th, 1905, with the full knowledge and consent of the defendant until November 29th, 1905, when the discussion as to costumes was reopened by the defendant company sending a communication in writing to Miss Lee, reading as follows :

" DEAR MADAME.— In the finale of the second act we have decided that you shall appear in military costume. We send you herewith a sketch of the costume desired, as the one you are now wearing does not have the correct effect, and we wish you to have it ready when the show opens at the American Theatre. Kindly let us know as soon as you have the costume in readiness so we can look it over.

" Yours very truly,
                    " HURTIG & SEAMON."

This letter was accompanied by a plate showing a costume consisting merely of a helmet and a short trunk or bodice at the loins and without skirt, leaving the body, encased in tights, entirely exposed. After receiving this letter Miss Lee sought on a number of occasions to have an interview with Hurtig, but was unsuccessful, and some time after a notice of discharge was served on the plaintiffs on the ground that they had broken their contract by Miss Lee not appearing in costume presented. It thus appears that the breach of contract upon which the defendant relies is the failure of Miss Lee to procure the costume last referred to, and notify the defendant when she had it in her possession so that they might "look it over." It is quite apparent that this last sketch submitted to Miss Lee was intended to bring about a breach of the contract. Hurtig had already learned from Miss Lee that she was unwilling to appear in public even where the skirt came only to the knees, and he had assented as president of the defendant to a modified costume where the skirt came to the boot tops. Without any further negotiations he sent her a sketch which she described as an insult — a sketch that was without skirt — practically a costume entirely in tights, and one which she as a modest woman was unwilling to wear in public performances. It seems to me that no other construction is possible under the circumstances. Hurtig was well aware that she would not accept this costume and would surely consider the sending of it to her as an insult.

The contract had long before been practically construed by the parties, and the defendant had by acts conceded that Miss Lee's unwillingness to wear the objectionable costume should be respected. The manner in which the defendant sought to terminate the contract at the end of the first year's employment was disingenuous and unwarranted.

It is quite true that the plaintiffs' counsel put in his case under adverse circumstances owing to many rulings of the trial judge that would have proved fatal to a verdict in favor of the defendant

It is insisted that this judgment for the plaintiffs must be reversed by reason of two errors of the trial judge in charging the jury. The first alleged error is based upon the following portion of the charge: "Now, I have construed the contract in the case to mean that the defendants were entitled to require this lady to wear this particular costume. I also construe the contract to mean, which is the law in this case for you, that where the parties had once agreed upon a costume for a particular part in a particular play, and that costume had been procured by this lady, that then she had fulfilled her part of the contract, so far as the costume for that particular play and part were concerned; and the defendant could not afterwards require her to procure at her own expense another costume."

The substance of this charge is that the defendant, while entitled to require Miss Lee to wear the objectionable costume originally, could not do so after a costume had been selected for the particular play and part. Conceding that this construction of the charge was erroneous, nevertheless it worked no injury to the defendant in view of the practical construction of the contract, to which reference has already been made, that defendant had agreed to the lengthening of the skirt from the knee to the boot top. If any one was injured by the charge it was the plaintiffs.

The second alleged error is based upon the following part of the charge: "Now, I charge you that having once agreed on the costumes, and having once procured them for that particular play and that particular part, her obligation was at an end, and that she was not required, even if the defendant directed her so to do, to procure at her expense another costume." It will be observed that this is repetitious and, in substance, like the portion of the charge already quoted.

Mr. Cohn, the manager of the defendant, testified as a witness for the defendant that he had an interview with Mrs. Morrison (Miss Lee) after the delivery to her of the letter sent by defendant containing a sketch of the objectionable costume. He was asked this question: "Q. Please state as nearly as

you can what she said, the best memory you have? A. Mrs.
Morrison said to the effect that it was insulting and that she
wouldn't wear tights. * * * Q. Did she at any time say
anything about the cost of this costume? A. No, sir. * * *
I don't think I had any further conversation with Mrs. Morrison; it was an understood fact that she wouldn't wear
tights."

It is argued that as the written contract provided that Miss
Lee was to wear " all necessary costumes," that the foregoing
portions of the charge are fatal to the judgment. That would
be so if the parties stood on the written contract, but they did
not. As already pointed out, they have given the contract a
practical construction by discussing the first costume adopted
and altering the skirt to meet Miss Lee's criticism.

It is said that this affirmance was by a divided court. This
is an error; neither the order nor the judgment shows affirmance by a divided court.

The judgment and order appealed from should be affirmed,
with costs.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT and HISCOCK, JJ.,
concur with WERNER, J.; CHASE, J., concurs with EDWARD T.
BARTLETT, J.

Judgment reversed, etc.